**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **HANS OWENS,** | |
| *Plaintiff,* | |
| **v.** | |
| **PERDUE FARMS, INC., & PERDUE FOODS LLC,** | |
| *Defendants,* | **CIVIL ACTION NO.** |
| **AND** | **5:20-cv-00307-TES** |
| **PERDUE FARMS INC.,** | |
| *Third-Party Plaintiff,* | |
| **v.** | |
| **THE VINCIT GROUP d/b/a QSI INC.,** | |
| *Third-Party Defendant.* | |

**ORDER GRANTING DEFENDANT PERDUE**
**FOODS LLC'S MOTION TO DISMISS**

Before the Court is Defendant Perdue Foods LLC's Motion to Dismiss [Doc. 36] pursuant to Federal Rule of Civil Procedure 12(b)(6). Perdue Foods contends that Plaintiff Hans Owens' claims against it are due to be dismissed as barred by the applicable statute of limitations. With careful consideration to the parties' briefs on the issue and the applicable law, the Court **GRANTS** Perdue Foods' dismissal motion.

## FACTUAL BACKGROUND

The following facts are taken from Owens' Amended Complaint [Doc. 28] and, in keeping with the cardinal rule for 12(b)(6)-based motions, they are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). At the time of the incident involved in this case, Owens worked as an employee of The Vincit Group, d/b/a QSI, Inc.,[1] at a facility operated by Defendants Perdue Farms, Inc., and Perdue Foods, in Perry, Georgia. [Doc. 28, ¶¶ 7–8]. He had worked at the Perry facility for almost a month, and his sole job was to clean the machinery used by the Perdue entities to process chickens for food products. [*Id.* at ¶¶ 8–9].

On November 1, 2018, Owens was in the process of cleaning a Chiller machine located in the facility's chiller room. [*Id.* at ¶ 10]. The Chiller is used to start and aid in the cleaning process for the chickens. [*Id.* at ¶ 11]. Owens cleaned and removed chicken debris from the inside of the Chiller with a pressure washer. [*Id.*]. After he was finished pressure washing, Owens followed his training and "pulled the stop cord" to the pressure washer so he could "apply chemicals inside of the Chiller using a spray bottle and a wand." [*Id.*]. But because Owens was not an "authorized employee," he was not trained to and did not have the ability to isolate power to the Chiller. [*Id.* at ¶ 12]. While in the process of applying the cleaning agents to the inside of the Chiller, it suddenly

---

[1] Based on the pleadings, QSI, Inc., appears to be based in Chattanooga, Tennessee. [Doc. 39, ¶ 1]; *see also* [Doc. 40, p. 1].

restarted. [*Id.* at ¶ 13]. When it did, the Chiller's blades crushed and mangled Owens'

left hand. [*Id.* at ¶¶ 13–15].

## PROCEDURAL BACKGROUND

On August 5, 2020, Owens filed suit against Perdue Farms asserting claims for

negligence, negligence per se, and punitive damages for his hand injuries. [Doc. 1, pp.

3–5, 7]. Contemporaneously with its Answer [Doc. 5], Perdue Farms moved to dismiss

or alternatively substitute Perdue Foods as the correct corporate entity. *See generally*

[Doc. 6]. In support of its motion, Perdue Farms explained that, as the parent

corporation of Perdue Foods, it has no direct control or supervision over the day-to-day

operations within the Perry facility. [Doc. 6, p. 2]; *see also* [Doc. 36, p. 2]. Since Perdue

Foods "wholly owns and operates" that facility, Perdue Farms explicitly requested that

Owens "be required to substitute Perdue Foods as the [d]efendant in th[is] case." [Doc.

6, p. 2].

Owens, however, argued that his Complaint [Doc. 1] asserted "a legitimate claim

against Perdue Farms." [Doc. 13, p. 1]. In his response brief, Owens wrote: "If Perdue

Foods is the proper party, [he] will dismiss Perdue Farms and add Perdue Foods in

accordance with the law and this Court's [yet-to-be-entered] Scheduling Order." [*Id.* at

pp. 2–3]. Owens also mentioned a Proposed Stipulation [Doc. 13-2] in which he, with

Perdue Farms' agreement, would dismiss it as a defendant and "add Perdue Foods,

while preserving [his] claims against Perdue [Farms][2] in the event evidence is disclosed in discovery that would support claims against it." [Doc. 13, p. 2]; *see also* [Doc. 13-2]. Owens' argument in his response brief is absolutely correct—"[i]f the evidence establishes that Perdue Farms bears no responsibility for the allegations in the Complaint, [it] can file a motion for [s]ummary [j]udgment." [Doc. 13, p. 3]. Put succinctly, with respect to Perdue Farms, Owens took the position that his Complaint pled "sufficient facts to state a claim against" it and, because of that, he was "intending to prosecute his claims." [*Id.*]. But then, Owens went further. He noted that "[i]f the evidence establishes that Perdue Foods *also* bears responsibility, [he] will move to *add* it" as a defendant. [*Id.*] (emphasis added). Yes, Owens had the ability to add Perdue Foods and pursue claims against both entities, but the addition of Perdue Foods must be, as he stated, "in accordance with the law." [*Id.* at pp. 1–2]. And, as the Court will explain below, Owens' window of opportunity to add Perdue Foods "in accordance with the law" closed much quicker than he thought it would.

In addition to mentioning his and Perdue Farms' Proposed Stipulation, Owens attached a copy of it to his response brief. [Doc. 13-2]. The Proposed Stipulation bore the electronic signatures of Owens' and Perdue Farms' counsel and based on what appeared to be a signed stipulation, the Court denied Perdue Farms' motion. [Doc. 15];

---

[2] In his argument, Owens wrote ". . . while preserving [his] claims against Perdue Foods." [Doc. 13, p. 2]. However, the Court assumes that this was merely a scrivener's error and that Owens intended to write that his claims would be preserved against Perdue Farms.

*see, e.g.*, [Doc. 13-2, p. 4]. The following day, however, one of Owens' attorneys, Kendall Dunson, emailed the Court "to make it clear that[,]" despite the electronic signatures, "Perdue Farms did not agree" to the Proposed Stipulation. Email from Kendall C. Dunson, Att'y for Plaintiff, to Cheryl Collins, Courtroom Deputy for Judge Tilman E. Self, III (Sept. 18, 2020, 1:29 EST) (on file with author). Mr. Dunson further explained that he merely attached the Proposed Stipulation with electronic signatures as he "presented [it] to Perdue Farms." *Id.* To Mr. Dunson's credit, however, the space in which the parties would have written the date they agreed to the Proposed Stipulation was, candidly, left blank. *See, e.g.*, [Doc. 13-2, p. 3]. Once Perdue Farms objected to the Proposed Stipulation, Mr. Dunson "contacted the Clerk of Court" in an effort to clear up any confusion. Email from Kendall C. Dunson, Att'y for Plaintiff, to Cheryl Collins, Courtroom Deputy for Judge Tilman E. Self, III (Sept. 18, 2020, 1:29 EST) (on file with author). Consistent with the directive from the Clerk of Court, Mr. Dunson "file[d] a substitute exhibit[,]" this time attaching an unsigned Proposed Stipulation. *Id.*; [Doc. 14-1]. In light of Mr. Dunson's email explaining the mix-up and that it was "not [his] intent to imply that Perdue Farms agreed to the [Proposed] Stipulation[,]" the Court vacated its Order [Doc. 15] denying Perdue Farms' dismissal motion. [Doc. 16]; Email from Kendall C. Dunson, Att'y for Plaintiff, to Cheryl Collins, Courtroom Deputy for Judge Tilman E. Self, III (Sept. 18, 2020, 1:29 EST) (on file with author).

Perdue Farms subsequently filed its reply brief. [Doc. 17]. In that brief, Perdue Farms, ostensibly because of the mix-up with the Proposed Stipulation, withdrew its "request that [Owens] be required to substitute Perdue Foods as a defendant in this case." [Doc. 17, p. 2]. With Perdue Farms' dismissal motion now fully briefed and accompanied by a property tax statement from Houston County, Georgia, and tax documents from Maryland, it was ripe for consideration. *See* [Doc. 17-1]. However, on October 21, 2020, Perdue Farms withdrew its motion. [Doc. 6]; [Doc. 20].

Almost two months later, on December 14, 2020, Owens moved to amend his Complaint (primarily to add Perdue Foods as a defendant). [Doc. 26]. Neither Perdue Farms nor Perdue Foods objected to Owens' proposed Amended Complaint. *See* [Doc. 26-1]. So, with the Court's leave, Owens filed his Amended Complaint [Doc. 28] on January 19, 2021. [Doc. 27]; [Doc. 28, p. 8]. After Owens formally added Perdue Foods as a defendant, it filed its Answer [Doc. 35] along with the dismissal motion now before the Court. [Doc. 36].

The gist of Perdue Foods' argument is that the claims Owens asserts against it via his Amended Complaint should be dismissed on statute-of-limitations grounds. [Doc. 36, pp. 3–7]. Owens, on the other hand, argues that the statute of limitations for his claims has not yet expired due to an emergency order issued by the Georgia Supreme Court in response to the coronavirus (Covid-19) pandemic. [Doc. 41, p. 3]. Not to put too fine a point on it, but if Owens is right that the Georgia Supreme Court

actually added 122 days to all statutes of limitation, then Perdue Foods is a proper defendant in this lawsuit and its statute-of-limitations arguments never come into play. But, unfortunately for Owens, he misinterpreted that order. And because he did, the Court must address whether his Amended Complaint—adding Perdue Foods as a defendant after the statute of limitations expired—can relate back to his original.

By way of a roadmap, the Court will first address the parties' arguments concerning the Georgia Supreme Court's emergency order before turning its attention to the more substantive dismissal arguments raised by Perdue Foods.

## DISCUSSION

### A.    The Georgia Supreme Court's Emergency Order

To recap, Owens' hand injury occurred on November 1, 2018. [Doc. 28, ¶¶ 7, 13]. Considering Georgia's two-year statute of limitations for personal injury claims, Owens contends that "[u]nder normal circumstances," he would have had until November 1, 2020, to file his lawsuit. [Doc. 41, p. 3]. Of course, though, Covid-19, brought about anything but normal circumstances.

Relying on its emergency powers,[3] the Georgia Supreme Court entered several orders that extended statute-of-limitations deadlines. *See, e.g.*, [Doc. 41-1, p. 6]. In its

---

[3] *See* O.C.G.A. § 38-3-61 (stating that "[a]n authorized judicial official is authorized to declare the existence of a judicial emergency"). On March 14, 2020, "in response to the [Covid-19] pandemic," The Honorable Harold D. Melton, Chief Justice of the Supreme Court of Georgia, declared a statewide judicial emergency. *See, e.g.*, [Doc. 41-1, p. 2].

fourth extension order, the Georgia Supreme Court declared that, "[t]he 122 days between March 14 and July 14, 2020, or any portion of *that* period in which a statute of limitation *would have run*, shall be excluded from the calculation of *that* statute of limitation." [*Id.*] (emphasis added).

Owens relies on the Georgia Supreme Court's emergency order to support his argument that he filed his Amended Complaint well within—what he says is—the correct deadline for his limitations period, March 3, 2021. First, he argues that March 3rd is correct because the Georgia Supreme Court added 122 days to the original statute of limitations that would have ended on November 1, 2020. [Doc. 41, p. 3]. And second, based on his reading of the emergency order, Owens contends that because he filed his Amended Complaint well before March 3, 2021, he timely and properly added (not substituted) Perdue Foods as a defendant. [*Id.*]. Perdue Foods, of course, disagrees with Owens' position. Rather than add days to filing deadlines, Perdue Foods argues that the 122-day period didn't affect Owens' statute of limitations because it did not run within those specific 122 days—March 14 through July 14, 2020. [Doc. 43, p. 2]. "In other words," Perdue Foods asserts, only "plaintiffs who held claims that would have become time-barred on any day during that 122-day period were excused from filing by that date." [*Id.* at pp. 2–3]. The Court agrees with Perdue Foods.

The Georgia Supreme Court's choice of phrasing—"any portion of *that* period . . . shall be excluded from the calculation of *that* statute . . ."—clearly refers only to the

period between March 14  through July 14, 2020. This obvious, plain-text limitation means that Owens didn't receive an additional 122 days to file his lawsuit because his statute of limitations did not run within *that* period. *Cf. Greene v. Quicken Loans, LLC*, No. 4:20-CV-135 (CDL), 2021 WL 232593, at *5 (M.D. Ga. Jan. 22, 2021) (finding claims timely for a statute of limitations that expired in April 2020). Owens' interpretation that the Georgia Supreme Court granted every potential plaintiff a 122-day bonus extension to every applicable statute of limitations is simply unreasonable.

Owens' statute of limitations ran more than three months after the period mentioned in the emergency order, giving him plenty of time to comply with its deadline. And even though Owens timely filed his lawsuit against Perdue Farms on August 5, 2020, he can only assert claims against Perdue Foods if his Amended Complaint somehow relates back to his original.

B.     **Perdue Foods LLC's Motion to Dismiss[4]**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "on [statute-of-limitations] grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Brotherhood of Locomotive Eng'rs v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275,

---

[4] In reviewing the record, Owens' Amended Complaint, specifically Count II, includes allegations that could—on their face—invoke federal-question jurisdiction under 28 U.S.C. § 1331. *See, e.g.*, [Doc. 28, ¶¶ 23–24]. However, based on the Court's discussion of that count, *see* Section C, *infra*, the Court concludes that a diversity-jurisdiction-based analysis is the correct approach in resolving the arguments Perdue Foods raises in its dismissal motion.

1288 (11th Cir. 2005)). This is because a statute of limitations bar acts as "an affirmative

defense, and . . . plaintiffs are not required to negate an affirmative defense in their

complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting

*Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)) (cleaned up). It is

well established that federal courts sitting in diversity must apply state substantive law

and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). And here,

Georgia law provides the applicable statute of limitations for Owens' claims since they

are state-law claims, and federal jurisdiction is based on diversity of citizenship.

*Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("[I]n all cases where a federal

court is exercising jurisdiction solely because of the diversity of citizenship of the

parties, the outcome of the litigation in the federal court should be substantially the

same, so far as legal rules determine the outcome of a litigation, as it would be if tried in

a [s]tate court.").

As briefly mentioned above, Georgia's two-year statute-of-limitations period for

personal injury actions means that Owens had until November 1, 2020, to add Perdue

Foods as a party and assert claims against it. O.C.G.A. § 9-3-33. Since Owens didn't file

his Amended Complaint until January 19, 2021, the only way his claims against Perdue

Foods can continue is if he satisfies the relation-back doctrine. [Doc. 28, p. 8].

As to relation back, the Eleventh Circuit has held that Federal Rule of Civil

Procedure Rule 15(c)(1) "allows federal courts sitting in diversity to apply relation-back

rules of state law where, as here, state law provides the . . . limitations [period] for the action." *Saxton v. ACF Indus.*, 254 F.3d 959, 963 (11th Cir. 2001). Often, federal courts give deference to state law when it "affords a more forgiving principle of relation back than the one provided [under the federal standard]." *Marshall ex rel. Marshal v. Kykiris*, No. 4:18-CV-119 (CDL), 2019 WL 7403322, at *1 n.1 (M.D. Ga. Oct. 25, 2019) (citation omitted). However, considering this case's procedural history, even the state-law standard would not yield a favorable result to Owens. *See id.* (noting Georgia's relation-back rule would not provide a more forgiving standard than the federal rule). Why? Because current case law from both the Georgia Supreme Court and the Eleventh Circuit shows a blurring of the line between the state and federal standards. In large part, the guidance from these two courts seems to do away with the notion that one standard may be more forgiving than the other.

For instance, the Eleventh Circuit recently noted that Georgia's relation-back statute is modeled after the federal provision, and since the two are "nearly identical," any distinction between the two has, for the most part, been eroded. *Jester v. Emerson Climate Techs., Inc.*, --- F. App'x ----, 2021 WL 942781, at *2 n.1 (11th Cir. Mar. 12, 2021) (noting that an application of Georgia's relation-back provision or the federal relation-back provision "is a distinction without a difference"). The same train of thought can be said for the Georgia Supreme Court as well. To further demonstrate the dwindling distinctions between Georgia's relation-back statute and the federal provision, the

Georgia Supreme Court, as recent as three months ago, used a United States Supreme Court's interpretation of Rule 15 in issuing a decisive opinion showing just how it would, in its own court system, handle the relation-back issue presented here. *Oconee Cnty. v. Cannon*, 854 S.E.2d 531 (Ga. 2021) (recognizing that Georgia's relation-back statute is modeled "upon" Rule 15(c)); *Krupski v. Costa Crociere S.p.A*, 560 U.S. 538 (2010); *see also Guaranty Tr.*, 326 U.S. at 109, *supra*.

Following suit with the Georgia Supreme Court in *Oconee County v. Cannon*, the Court, likewise, begins its analysis with the text of Georgia's relation-back statute. 854 S.E.2d at 536.

> Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

O.C.G.A. § 9-11-15(c).

In order to streamline the statute's requirements, the Georgia Supreme Court has said that three conditions must be met before an otherwise barred claim from an amended complaint can relate back to the original complaint. *Cannon*, 854 S.E.2d at 536. First, the claim must "arise[] out of the conduct, transaction, or occurrence" as set forth

in the original pleading" *Id.* Second, "the proposed defendant, before the statute of limitations expired," must have "'received such notice of the institution of the action that [it] will not be prejudiced in maintaining [its] defense on the merits[.]'" *Id.* Third, before a claim can relate back, "the proposed defendant, before the statute of limitations expired," must have "'kn[own] or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it].'" *Id.*

Before going further, let's pause for a moment and assess exactly what the Georgia Supreme Court, in *Cannon*, and the United States Supreme Court, in *Krupski v. Costa Crociere S.p.A*, instruct. In *Cannon*, the Georgia Supreme Court recognized *Krupski*'s conclusion that "the third condition of Rule 15(c) was met because [relation back] 'depends on what the party to be added knew or should have known, not on the amending party's knowledge.'" *Cannon*, 854 S.E.2d at 536 (quoting *Krupski*, 560 U.S. at 541). Thus, whether relation back applies is not a question of "whether the *plaintiff* knew or should have known the identity of the proper defendant, but whether the proper *defendant* knew or should have known that the action would have been brought against [it] but for the plaintiff's mistake." *Id.* at 537 (citing *Krupski*, 560 U.S. at 548). In fact, the *Cannon* opinion explicitly states that an analysis of the relation-back statute focusing on the plaintiff's knowledge instead of the proposed defendant's knowledge "is disapproved." 854 S.E.2d at 538.

13

Here, easily enough, Perdue Foods "concedes" that Owens' Amended Complaint "arises out of the same conduct, transaction, or occurrence set forth in his original Complaint" and that it "had notice of the original Complaint at the time of its filing." [Doc. 36, p. 6]. And while the focus cannot be on what Owens knew or when he knew it, he, undoubtedly, knew—because Perdue Farms told him so—as early as August 27, 2020, that Perdue Foods was the proper corporate entity he needed to sue. [Doc. 6, p. 2]. So, this analysis doesn't concern whether Owens "sat on his hands" or attempted some strategic maneuver.[5] For all intents and purposes, Owens could likely satisfy the three conditions to Georgia's relation-back statute—but as the Court will explain, because of *when* he added Perdue Foods as a defendant, the statute doesn't even come into play. In other words, although the correct analysis focuses on Perdue Foods' knowledge— knowledge that almost certainly seals the deal in favor of permitting relation back—

---

[5] Several times, Perdue Foods argues something to the effect that Owens' actions were a "tactical" or "strategic" error. *See, e.g.,* [Doc. 36, p. 6]; [Doc. 43, pp. 2, 6]. But to what avail? How could his actions have "strategically" benefited him? Specifically, Perdue Foods argues that Owens' "decision to amend the Complaint and add Perdue Foods as a party defendant forty-three (43) days after the expiration of the applicable statute of limitation amounts to a tactical error rather than a mistake[.]" [Doc. 36, p. 6]. Again, to apply the relation-back doctrine, "there must be 'a mistake concerning the identity of the proper party.'" *Cannon*, 854 S.E.2d at 537 (quoting O.C.G.A. § 9-11-15(c)). And a party "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making" a mistake. *Cannon*, 854 S.E.2d at 537 (quoting *Krupski*, 560 U.S. at 549). Owens, however, didn't make a deliberate choice to sue Perdue Farms with full understanding that he sued the wrong party at the time he filed his original Complaint; he simply made a mistake. And "[g]iven the similarities between Perdue Farms and Perdue Foods," it was an understandable one. [Doc. 41, p. 4]; *see also* [Doc. 43, p. 6 (Perdue Foods' agreement that Owens' decision to sue Perdue Farms was "understandable")]. Perdue Foods though, by its arguments, would have the Court stretch the Georgia Supreme Court's interpretation of O.C.G.A. § 9-11-15(c) to include a scenario where a party makes a mistake in *continuing* to sue one party over another to block relation back, and the Court simply cannot find such an interpretation permissible. To the contrary, Owens could have sued both Perdue Farms and Perdue Foods, but in order to do so, he had to timely add Perdue Foods.

14

deciding this motion ultimately doesn't hinge on whether O.C.G.A. § 9-11-15(c)'s three conditions can be met.

After the Georgia Supreme Court lays out the full text of Georgia's relation-back statute in *Cannon*, its very next sentence reads:

> **"Thus, this statute allows a plaintiff to <u>substitute</u> one defendant for another after the claim would otherwise be barred by the statute of limitations, provided that three conditions can be met: . . . ."**

854 S.E.2d at 536. (emphasis added).

There lies the fatal flaw in Owens' logic. Consistently, Owens has told Perdue Farms and the Court that he wants to sue both Perdue entities.[6] *See, e.g.*, [Doc. 13, pp. 2–3]; [Doc. 41, p. 4]. And, truthfully, he could have, provided that he amended his original Complaint to add Perdue Foods "in accordance with the law" or, in other words, before the statute of limitations expired. [Doc. 13, pp. 1–2]. By its plain language, Georgia's relation-back statute doesn't allow a plaintiff to *add* a brand-new defendant to an already-existing lawsuit after the statute of limitations has already run. It only allows a party to "chang[e]," substitute, swap, replace—however you want to put it—"one defendant for another." O.C.G.A. § 9-11-15(c); *Cannon*, 854 S.E.2d at 536. When used properly, the number of defendants never changes.

---

[6] Owens' suggestion that Perdue Farms could move for summary judgment "[i]f the evidence establishes that [it] bears no responsibility for the allegations in the Complaint," makes it palpably clear that Owens never actually intended to substitute Perdue Foods in the place of Perdue Farms. [Doc. 13, p. 3].

The Georgia Supreme Court's language in *Cannon* shows, once again, just how similar O.C.G.A. § 9-11-15(c) is to Rule 15(c). By unequivocally stating that the statute only "allows a plaintiff to substitute," its ruling is consistent with federal-court decisions. *Cannon*, 854 S.E.2d at 536. In *Curry v. Sellers*, this district ruled that because the plaintiff "ha[d] not sought to *change* a party named initially in his earlier pleadings but ha[d] instead sought simply to *add* entirely new parties to the suit, relation back does not apply." No. 5:17-cv-00424-MTT-CHW, 2019 WL 4720985, at *4 (M.D. Ga. Sept. 26, 2019).[7]

Owens had from August 27, 2020, until November 1, 2020, to amend his Complaint to *add* Perdue Foods as a defendant before his two-year limitations period ended. Adding Perdue Foods at any time within those 66 days would have been "in accordance with the law" and would have saved Owens' claims against it.[8] Yes, the result may seem harsh, but the Court cannot use Georgia's relation-back statute for

---

[7] In his *Curry* decision, Chief Judge Treadwell relied purely on federal law and standards as well as "the long history of th[e] case" to rule that an amendment that would add 11 new defendants after "four motions to amend, four motions to dismiss, an interlocutory appeal, and orders to sever and consolidate . . . would be prejudicial to the [nonmoving] parties and unduly delay proceedings." *Id.* at *3–4 (citing *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006)).

[8] When Perdue Farms withdrew its motion on October 21, 2020, Owens waited until December 14, 2020, to seek leave to amend his Complaint. [Doc. 26]. While hindsight is 20/20, the only reason leave to amend was required was because Owens allowed the 21-day period under Rule 15(a)(1) to pass. This tangled statute-of-limitations issue could have been avoided if Owens had acted diligently in accordance with Rule 15(a)(1)(A) to timely add Perdue Foods as a defendant by November 1, 2020. However, given Owens' interpretation of the Georgia Supreme Court's emergency order and his thinking that he had until March 3, 2021, to add Perdue Foods as a defendant, his actions are understandable. But that necessarily depended on him interpreting the emergency order correctly.

something it was never intended to do. *But see Leary v. Perdue Farms, Inc.*, --- S.E.2d ----, 2021 WL 1084417, at \*3 (Ga. Ct. App. 2021) (citing *St. Francis Health v. Weng*, 840 S.E.2d 712 (Ga. Ct. App. 2020)).

The Court's analysis and ultimate decision in this case, assuredly, wasn't made without attention to last month's decision from the Georgia Court of Appeals pointing out "circumstances" where an "amendment should be allowed to *add* a party defendant." *Id.* (emphasis added). In *Leary v. Perdue Farms, Inc.*, the Georgia Court of Appeals cautioned that when the original defendant and the defendant to be added (ironically, the exact same two defendants in this case) via an amended complaint "are intertwined corporations" and have both "received notice of the action before the expiration of the statute of limitation, the prejudice that might otherwise exist is negated." 2021 WL 1084417, at \*3 (citing *Fontaine v. Home Depot*, 550 S.E.2d 691, 695–96 (Ga. Ct. App. 2001)). This "word of caution," however, only speaks to prejudice,[9] and whether a defendant will be prejudiced by its substitution can only be evaluated when Georgia's relation-back statute applies. And following *Cannon*'s preference for a "natural reading" of O.C.G.A. § 9-11-15(c) and its carefully-selected language, an amendment that seeks to add a defendant rather than substitute one after the statute of limitations expires will not invoke the statute. 854 S.E.2d 535–36. Even though the

---

[9] In this case, Perdue Foods clearly would not have been prejudiced considering its admission that it "had notice of [Owens'] original Complaint at the time of its filing." *See* O.C.G.A. § 9-11-15(c)(1) *in connection with* [Doc. 36, p. 6]; *see also Leary*, 2021 WL 1084417, at \*3 n.3.

Georgia Court of Appeals may have inadvertently used "add a party" in dicta, its holding was nevertheless consistent with *Cannon* because it was reviewing a Georgia trial court's denial of a *motion for leave to substitute*. *Leary*, 2021 WL 1084417, at *1–2 ("About a month later, Leary filed a motion to amend his complaint to *substitute* 'Perdue Foods, LLC as a party defendant, *in place of* its corporate affiliate, and original [d]efendant, Perdue Farms, Inc.") (emphasis added).

At bottom, Owens needed to add Perdue Foods via an amended pleading *before* the two-year statute of limitations expired if he wanted to sue both corporate entities. However, because Owens added—rather than substituted—Perdue Foods 79 days too late, the Court must **GRANT** its Motion to Dismiss [Doc. 36]. *See* [Doc. 28, p. 8].

## C.    <u>Count II – Negligence Per Se</u>

The second count of Owens' Amended Complaint alleges violations of 29 C.F.R. §§ 1910.212 and 1910.147. [Doc. 28, ¶¶ 22–26]. The authority for these federal regulations comes from 29 U.S.C. §§ 653, 655, and 657, more commonly referred to as standards set forth by the Occupations Safety and Health Act of 1970 or "OSHA." *See* [Doc. 28, ¶¶ 20, 23–24, 28, 30]. Passed by Congress in 1970, OSHA requires every employer to furnish its employees with "a place of employment which [is] free from recognized hazards that are causing or are likely to cause death or serious physical harm to [its] employees." 29 U.S.C. § 654. By means to accomplish Congress's goal, OSHA created two new remedies which permit the Secretary of Labor, "proceeding

18

before an administrative agency, (1) to obtain abatement orders requiring employers to correct unsafe working conditions and (2) to impose civil penalties on an employer maintaining any unsafe working condition." *Atlas Roofing Co. v. Occupational Safety and Health Rev. Comm'n*, 430 U.S. 442, 445 (1977).

Pursuant to OSHA, "[e]mployees have been granted specific rights in the investigatory and rule-making stages of the Act, including the right to . . . request that the Secretary [of Labor] conduct a workplace inspection when employees suspect that a violation has occurred." *Donovan v. Occupational Safety and Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) *accord Donovan v. Local 962, Int'l Chem. Workers Union*, 748 F.2d 1470 (11th Cir. 1984). Despite these rights, however, an employee's role in enforcing the Act is quite limited. *Donovan*, 713 F.2d at 926.

"Nowhere in the language of the Act, its legislative history, or in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms." *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976 (5th Cir. 1975).[10] OSHA provides:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or *affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law* with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

---

[10] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

29 U.S.C. § 653(b)(4) (emphasis added). With at least six circuits to have considered this provision from the Act, "it is now well established that 'OSHA violations do not themselves constitute a private cause of action for breach.'" *Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143–44 (D.C. Cir. 2003) (citing cases). Since OSHA does not create a private right of action, it appears that Owens cannot state a cognizable negligence per se claim upon which relief may be granted. Accordingly, the Court **ORDERS** the parties to **SHOW CAUSE** within ***14 days*** from the date of this Order why the OSHA-related claims set forth in Count II should not be dismissed.

   **SO ORDERED**, this 29th day of April, 2021.

                                        S/ Tilman E. Self, III
                                        **TILMAN E. SELF, III, JUDGE**
                                        **UNITED STATES DISTRICT COURT**