IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| HANS OWENS,<br><br>    *Plaintiff*,<br><br>v.<br><br>PERDUE FOODS LLC,<br><br>    *Defendant/Third-Party Plaintiff*,<br><br>v.<br><br>THE VINCIT GROUP d/b/a QSI INC.,<br><br>    *Third-Party Defendant.* | CIVIL ACTION NO.<br>5:20-cv-00307-TES |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Perdue Foods LLC owns and operates a poultry-processing facility in Perry, Georgia, and it contracts with the third-party defendant captioned above—QSI, Inc.—to clean its equipment. [Doc. 86-1, ¶¶ 1–2, 6]. Our plaintiff, Hans Owens, is employed by QSI, and he brings this suit to recover for an injury he sustained to his hand while cleaning Perdue Foods' equipment. [*Id.* at ¶¶ 1, 11]; [Doc. 81-6, Owens Depo., p. 17:20–25]; [Doc. 86, p. 3]. Before initiating this suit, however, Owens admits that he "received workers' compensation benefits and signed a release to the incident at issue." [Doc. 86-1, ¶ 20]. Perdue Foods contends, *inter alia*, that the release in question entitles it to a quick summary judgment.

Because of the procedural history in this case, Perdue Foods, in its Motion for Summary Judgment [Doc. 81], argues that Owens is left with "a single premises-liability

claim." [Doc. 81-2 p. 6]. Owens, however, says that Perdue Foods simply missed the mark in its summary-judgment efforts and that his Amended Complaint [Doc. 28] "clearly states" alternative theories for recovery. [Doc. 86, p. 3]. In his Response [Doc. 86], Owens certainly tries to set his suit back on his intended tracks, contending that his Amended Complaint sets forth theories of recovery based on Purdue Foods' ownership of its equipment and "its status as an employer in a multi-employer situation" along with QSI. [*Id.* at pp. 3, 5–8]. Put succinctly, he argues that Perdue Foods acted negligently when it failed "to comply with and ensure compliance with [certain] safety regulations" set by the Occupational Safety and Health Act, 29 U.S.C. §§ 651–78, and that "its failure to do so resulted in injury." [*Id.* at pp. 5, 8]. Albeit theories based on OSHA violations instead of premises liability, the first count of Owens' Amended Complaint presents a quintessential duty-breach-cause-harm negligence claim. [Doc. 28, ¶¶ 17–21].

Early in this suit, the Court offered the parties an opportunity to show cause why it should not dismiss Owens' second count—a negligence per se claim—in light of the fact that "'OSHA violations do not themselves constitute a private cause of action for breach.'" *Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143–44 (D.C. Cir. 2003) (citing cases); [Doc. 28, ¶¶ 22–26]; [Doc. 46, pp. 18–20]. When no party offered any response, the Court—relying on federal case law—dismissed Owens' efforts to directly recover for an alleged breach of OSHA violations under a negligence per se theory. *See*

*Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976 (5th Cir. 1975); *see generally* [Doc. 67]. But, because this suit is a diversity action, special attention must be paid to state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "It is well-settled that Georgia law allows the adoption of a statute or regulation as a standard of conduct so that its violation becomes negligence per se." *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1329 (N.D. Ga. 2021) (citing cases) (italics omitted). Under Georgia law, OSHA regulations are not seen only as "'standards' of performance, but as evidence of legal duty, violation of which may give a cause of action under OCGA § 51–1–6." *Cardin v. Telfair Acres of Lowndes Cnty.*, 393 S.E.2d 731, 733 (Ga. Ct. App. 1990). Despite this, Owens never asked the Court to reconsider its decision and revive his negligence per se claim because its dismissal under federal case law may have been in error. So, in an effort to potentially correct the procedural path caused by the Court's previous ruling, it held a hearing to determine exactly what it needed to decide—negligence with an eye toward premises liability, negligence per se as proscribed by OSHA regulations, or both. [Doc. 93]; *Cardin*, 393 S.E.2d at 733 ("Generally, there is not much room to doubt that [a] civil cause of action will lie for damages carried by a breach of a legal duty of diligence pr[o]scribed by statute or by incorporated regulations enacted thereunder.").

Turns out, even if the Court incorrectly dismissed Owens' negligence per se claim, the outcome of his suit still remains unchanged. When it comes down to it, it really doesn't matter whether this case is about premises liability or whether it's about

3

some form of negligence or negligence per se based on OSHA violations—no matter the claim, it faces an insurmountable hurdle to recovery.

After the incident at Perdue Foods' facility, Owens executed a "Full and Final Release of All Claims." [Doc. 81-10, pp. 1–2]. The release states that "in consideration of" $75,100, Owens

> hereby releases and forever discharges QSI and Perdue Farms, Inc. ("Client"), as well as their employees, agents, representatives, owners, successors, and assigns ("Releasees") and *any other* persons, *corporations*, associations, or partnerships **allegedly responsible for injuries to [Owens], and any other claims, demands, causes of action, damages, losses, judgments, actions, or lawsuits, known or unknown, anticipated or unanticipated, against Releasees as the result of an accident, incident, casualty, or event . . . which occurred or is alleged to have occurred on November 1, 2018 in Perry, Georgia.**

[*Id.* at p. 1 (emphasis added)]. True, the release only specifically names Perdue Farms, Inc., the parent corporation, and not Perdue Foods as a releasee. [Doc. 37, p. 2]. Owens fervently clings to this omission (the omission of Perdue Foods from the language of the release) as a potential lifeline. Owens contends that his claims are salvageable notwithstanding the devastatingly broad language that sufficiently covers any other entity (or person for that matter) from whom he might recover. He argues that under Georgia law, "[o]nly those parties named in the release will be discharged by that instrument." [Doc. 86, p. 14 (quoting *Dodds v. Dabbs, Hickman, Hill and Cannon, LLP*, 750 S.E.2d 410, 417 (Ga. Ct. App. 2013))]. Although not specially named in the release, there is no denying that Perdue Foods, as a subsidiary corporation of Perdue Farms, is a

corporation. [Doc. 7, p. 1]. Therefore, when Owens executed the release—with counsel[1]—as to "*any other* persons, *corporations*, associations, or partnerships" that could have been "allegedly responsible for" his injuries "as the result of" the "incident" that "occurred on November 1, 2018 in Perry, Georgia[,]" he necessarily released Perdue Foods. [Doc. 81-10, p. 1 (emphasis added)]. In fact, irrespective of his intent, he released "any . . . corporation[]" that could have been "allegedly responsible for" his hand injury. [*Id.*]; *Harkins v. CA 14th Invs., Ltd.*, 544 S.E.2d 744, 746 (Ga. Ct. App. 2001) (discussing that a party cannot "simply ignore the clear language of the release concerning its effect and rely on his own 'intent[]'").

The clear and inescapable language of the release included "any other . . . corporations" that could have been "allegedly responsible for" his injuries and that broad, sweeping language easily includes Perdue Foods. To conclude otherwise would render a considerable portion of the release as surplusage and of no import at all. That just isn't how contract law works. *Rice v. Huff*, 472 S.E.2d 140, 142 (Ga. Ct. App. 1996) (recognizing that the broad scope of a release does not make it ambiguous and subsequently unenforceable).

Owens also released Perdue Foods, and this ends his suit. Accordingly, the Court **GRANTS** Perdue Food LLC's Motion for Summary Judgment [Doc. 81], and it

---

[1] The Court notes that different counsel represented Owens when he executed the release. In fact, during the hearing mentioned above, Owens' current attorney told the Court that he would have advised Owens to *not* sign the release. However, Owens signed it, and he must deal with those consequences.

**DISMISSES** Owen's remaining claims against it **with prejudice**.[2] The Court is

**DIRECTED** to enter **JUDGMENT** accordingly and **CLOSE** this case.[3]

    **SO ORDERED**, this 13th day of October, 2022.

                                                          S/ Tilman E. Self, III
                                                          **TILMAN E. SELF, III, JUDGE**
                                                          **UNITED STATES DISTRICT COURT**

---

[2] In light of the Court's conclusion that Ownes undoubtedly released "any other claims, demands, causes of action, damages, losses, judgments, actions, or lawsuits, known or unknown, anticipated or unanticipated, against" Perdue Foods, the Court **TERMINATES** its Motion in Limine [Doc. 83] **as moot**. [Doc. 80-10, p. 1].

[3] Because Perdue Foods is not liable to Owens, then any claims asserted against QSI, the third-party defendant, may be dismissed as well.